AUSTIN, Banking Com'r of Texas, et al. v. SECOND NAT. BANK OF HOUSTON et al. (No. 8966.)

Court of Civil Appeals of Texas. Galveston. May 31, 1927.

1. Banks and banking ⊕⟹15—Agent in charge of insolvent bank had authority to approve depositor's claim for checking account balance as one payable out of guaranty fund.

Banking commissioner's liquidating agent in charge of insolvent bank did not exceed authority as agent in approving depositor's claim for balance of checking account as one payable out of guaranty fund, and so informing depositor and agreeing to pay such money, together with check from depositor, to another bank which had paid amount of draft indorsed by depositor to insolvent bank which had credited depositor's account.

2. Banks and banking ⊕⟹15—Where liquidating agent knew facts on which claim against bank rested, formal claim was unnecessary to authorize payment from guaranty fund (Rev. St. 1925, art. 456).

Under Rev. St. 1925, art. 456, relating to time for presenting claims to be paid out of depositor's guaranty fund, where liquidating agent had written depositor that depositor was entitled to have deposit paid out of guaranty fund, no formal claim or proof by depositor was necessary to authorize payment of claim out of guaranty fund.

Appeal from District Court, Brazoria County; M. S. Munson, Judge.

Suit by the Second National Bank of Houston against Chas. O. Austin, Banking Commissioner of Texas, and others, in which R. F. McGinty filed cross-action against Chas. O. Austin, Banking Commissioner, and in which the Banking Commissioner became a crossplaintiff as against McGinty. From the judgment, the State Banking Commissioner alone appeals. Affirmed.

John W. Goodwin and John W. Brady, both of Austin (John C. Goodwin, of Nacogdoches, of counsel), for appellant.

Rucks & Enlow, of Angleton, for appellees.

PLEASANTS, C. J. This litigation arose out of these facts: On April 17, 1923, S. O. Smith, for the firm of Smith & Davis, in payment of indebtedness of the firm of R. F. McGinty, gave him a draft for $947.30 on the Hitchcock State Bank. McGinty deposited this draft with the Farmers' State Bank at Alvin, Tex., and his account with that bank was credited with the amount of the draft. The draft was forwarded by the Alvin Bank to its correspondent, the Second National Bank of Houston, and, upon its receipt by that bank, the Alvin bank was given credit for the amount of the draft, and in due course of business between these banks the full amount of the draft was paid to the Alvin bank, before the Houston bank received notice of the dishonor of the draft by the drawee, the Hitchcock State Bank, on April 23, 1923. In the meantime McGinty had checked on his account with the Alvin bank, and reduced his balance to $735.85, and that bank, on April 23, 1923, had become insolvent, and been taken over by the state banking commissioner for liquidation of its indebtedness, and placed in the hands of H. N. Pardue as liquidating agent for the commissioner. The noninterest-bearing deposits in this bank when it was taken over by the commissioner were, under the law then in force, protected by the state depositors' guaranty fund.

Upon receipt of the notice of dishonor of the draft, the Houston bank promptly notified all parties to the draft, and shortly thereafter filed its claim with the banking commissioner against the depositors' guaran-

ty fund for the amount. The liquidating agent in charge of the Alvin bank, to whom the claim was presented, informed the Houston bank that he would have McGinty make claim against the guaranty fund for the balance of his deposit, and issue a check therefor to McGinty, which he would have him indorse and deliver to Houston bank. In pursuance of this promise, the trial court finds:

"That in the early part of May, 1923, the said H. N. Pardue, representing the banking commissioner and the banking department of the state of Texas, and the said R. F. McGinty, in perfect good faith on the part of each, entered into an agreement by the terms of which it was agreed by the banking commissioner, acting through his authorized liquidating agent, as aforesaid, that, if McGinty would pay to the banking commissioner for the credit of said bank the sum of $211.49, that said sum, together with McGinty's deposit of $735.85 in said bank, would be used by the commissioner in paying said draft, and thus paying the Second National Bank of Houston, and that said matter would be handled by the banking commissioner by offsetting the amount of McGinty's balance against said draft and the payment of the balance of said draft, to wit, $211.49, with the payment to be made by McGinty to said commissioner for that purpose; that it was further understood and agreed that it would not be necessary for McGinty to file any claim on account of his deposit in said bank; that on August 3, 1923, in compliance with said agreement, McGinty paid to the banking commissioner of Texas the sum of $211.49 by paying said sum to Roy Marcom, special liquidating agent then in charge of said bank for the banking commissioner of Texas; and I find that the said Marcom, special liquidating agent, as aforesaid, told McGinty, upon his making said payment, that such payment with McGinty's deposit in the bank was in full payment and in satisfaction of said draft, and that McGinty need not take any further action in the matter, but could treat the matter as a closed transaction so far as he was concerned. I find that the general liquidating agent at Austin, Tex., directly in charge of the liquidation of the banks under the commissioner of banking, ratified and confirmed said agreement with McGinty, and that McGinty had no information that it would not be so handled until about the time this suit was filed, after the time prescribed by law for proving claims had expired."

The Houston bank was not paid the amount of the draft, and its claim therefor against the guaranty fund was refused, and such claim classified and allowed as that of a general creditor.

Thereafter the Second National Bank of Houston brought this suit against Smith and Davis and McGinty, the makers and indorsee of the draft, and the banking commissioner, seeking to recover the amount of the draft, and have same allowed as a claim against the depositors' guaranty fund.

The defendant McGinty answered by general demurrer and general denial and by special pleas, the nature of which need not be stated. He also, by cross-action against his codefendant, Chas. O. Austin, banking commissioner, sought to recover the amount of the draft as a deposit in the Farmers' State Bank, and require the commissioner to pay same out of the depositors' guaranty fund. His cross-action alleges, in substance, all of the facts before stated, and further alleges that, relying upon the agreement and promise of the liquidating agent, he filed no formal claim against the state guaranty fund, and did not know until this suit was filed that the defendant commissioner had failed to comply with the agreement.

The defendant banking commissioner answered plaintiff's petition and the cross-action of McGinty by general demurrer and general denial, and specially pleaded the failure of the plaintiff to bring this suit within six months after the rejection of its claim against the depositors' guaranty fund. In further answer to the cross-action of defendant McGinty, he pleaded:

"That such cross-action was barred by McGinty's failure to file his claim and make legal proof within 90 days after legal notice, and further specially denied that McGinty ever presented a claim at all. He further pleaded that, if the agreement alleged by McGinty to have been made with the agents in charge of the bank was in fact made, it was made without authority, and that such agreement was not binding upon either the bank or the banking commissioner. The commissioner in turn became a cross-plaintiff as against McGinty; and alleged the indorsement of the draft by McGinty and delivery to Farmers' State Bank, which in turn indorsed the draft and delivered it to Second National Bank of Houston; that on presentation to the drawee bank it was dishonored with notice to McGinty; that Farmers' State Bank gave McGinty credit for the amount of the draft, when, in fact, it was received only for collection, and was to be charged back if not paid. The commissioner asked judgment against McGinty upon his indorsement in case plaintiff was permitted to recover against him."

The trial in the court below without a jury resulted in a judgment in favor of plaintiff against the defendants Smith, Davis, and McGinty for the amount due it upon the draft, but denying plaintiff any judgment against the defendant banking commissioner.

Judgment was further rendered in favor of McGinty against the banking commissioner for the amount of his deposit, and ordering it paid by the commissioner out of the guaranty fund.

The state banking commissioner alone prosecutes this appeal. No issue of fact is presented; the only question for our determination being whether, under the facts found by the trial court, the appellee McGinty lost his right to have his deposit in the insolvent bank paid out of the guaranty fund by his failure to file his claim therefor within the time prescribed by the statute.

The statute relied on by appellant to defeat McGinty's claim against the guaranty fund is

article 456, Revised Civil Statutes 1925. This article provides:

"The commissioner shall cause weekly notice to be given in one or more newspapers for three consecutive months, calling on all persons who may have claims against such bank to present the same to the commissioner and make legal proof thereof at a designated place within ninety days after the date of the first insertion of such notice. The notice shall, in larger type than that in which the body of the notice is printed, specifically state that no claim of guaranteed depositors presented after such time shall be entitled to payment in whole or in part out of the depositors' guaranty fund. The commissioner shall mail a similar notice to all persons whose names appear as creditors upon the books of the bank."

• We do not think this statute should be given a construction which would defeat the primary purpose and intent of the depositors' guaranty fund act, of which it formed a part. That act, after providing for the creation and maintenance of the necessary fund, provides that:

"All unsecured noninterest-bearing deposits, including cashier's checks, bank drafts, or exchange issued against or arising from bona fide unsecured and noninterest-bearing deposits, shall be protected under the guaranty fund." Article 446.

No question is made, and none could be made, as to McGinty's right to protection under this fund against loss of any part of the balance of his deposit as shown by the books of the bank at the time it became insolvent.

In order to expedite the liquidation and closing of the business affairs of an insolvent bank, the state banking commissioner is given full control of all of the bank's affairs and possession of all its property, and directed by the statute to give notice by publication in one or more newspapers for three consecutive months to all persons having claims against the bank to present their claims and make legal proof thereof within 90 days after the first publication of such notice, and to specifically state in such notice that no claim not presented within the 90 days shall be entitled to payment out of the depositors' guaranty fund.

The statute does not specify how the claim shall be made, nor the kind of legal proof necessary to establish it.

A claim was made in this case by the Houston bank within the 90 days to subrogation to appellee McGinty's right to his noninterest-bearing deposit, and to have the same paid to it out of the depositors' guaranty fund. The liquidating agent of appellant in charge of the affairs of the insolvent bank declined to agree to the Houston bank's claim of subrogation, but recognized McGinty's right to have his deposit paid him out of the guaranty fund, and wrote him informing him of the condition of his account and telling him that he

was entitled to have his deposit paid out of the guaranty fund, and that, if he would send check to cover the difference between the amount of his deposit and the amount of the claim of the Houston bank, he (the liquidating agent), would pay the deposit, and turn over the check to the Houston bank in settlement of its claim, and that he (McGinty) need give the matter no further attention. McGinty complied with these directions, and, relying on the promise of the liquidating agent, did not know until this suit was brought that his deposit had not been paid to the Houston bank out of the guaranty fund. This agreement of the agent in charge of the insolvent bank's affairs was approved by appellant's general liquidating agent.

[1, 2] We do not think appellant's agent, in approving McGinty's claim as one payable out of the guaranty fund, and so informing McGinty, exceeded his authority as such agent. As before stated, the facts upon which the claim rested were a matter of record in the insolvent bank, and were known to appellant's agent in charge of the bank. In these circumstances no formal claim or proof by McGinty was necessary to authorize the agent to pay the claim out of the guaranty fund. If he had complied with his agreement with McGinty, he would not have acted unlawfully, and neither the insolvent bank nor any of its creditors would have been heard to complain.

The cases of Chapman v. Bank (Tex. Civ. App.) 276 S. W. 731, and City of Harrisburg v. Austin (Tex. Civ. App.) 279 S. W. 498, cited by appellant, do not sustain his contention.

The judgment of the trial court is manifestly in accord with every principle of equity and with the spirit and purpose of our banking statutes, and, not being contrary to any express statutory provision or established rule of law, it should be affirmed, and it has been so ordered.

Affirmed.